[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10644
Non-Argument Calendar

_____

D.C. Docket No. 2:17-cv-00634-AKK

CHARLES JACKSON,

Plaintiff - Appellant,

versus

WAL-MART STORES, INC.,
WAL-MART STORES EAST, LP,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(November 20, 2018)

Before WILSON, MARTIN, and JORDAN, Circuit Judges.

PER CURIAM:

Charles Jackson appeals the district court's dismissal of his case against

Wal-Mart under Federal Rule of Civil Procedure 12(b)(6).  After careful review,

we hold Jackson stated a plausible claim for relief.  Therefore, we reverse and remand for further proceedings consistent with this opinion.

## I.

On April 21, 2015, Jackson set out to burn a small debris pile in the backyard of his Alabama home.  Parts of the pile were moist, and some of the wood in it was green, so he had difficulty getting it to ignite.  Figuring gasoline might help, he retrieved a plastic Blitz gas container.  Unbeknownst to him, this gas container did not have a flame arrestor, "a small, inexpensive metal device placed at the opening of a gas container's outlet [which] . . . prevents potential flames from traveling back into the gas container."

Using the Blitz container, Jackson poured gas onto the pile.  He then set the container aside and tried a few more times to ignite the debris pile, which succeeded in lighting only a small section of the pile.  He then grabbed the container to pour more gas on the pile.  As he did so, the burning debris ignited the vapor trail.  The fire traveled into the container, causing it to explode and cover Jackson in burning gas.

Jackson ran away from the pile and began rolling on the ground.  His roommate and neighbor attempted to extinguish the fire on Jackson's body and remove his burning clothes.  They waited with him until paramedics arrived to transport him to the hospital.  The explosion and its aftermath caused second-

2

degree burns to 80% of Jackson's body.  He spent more than 280 days in the hospital receiving treatment, including removal of damaged tissue and skin grafts.  So far, his treatment costs have exceeded $1,000,000.

Blitz was the largest manufacturer of plastic gas containers in the United States for years.  But, in part because of losses incurred from incidents similar to what happened to Jackson, Blitz filed for bankruptcy on November 9, 2011.  With minimal likelihood of recourse against Blitz, Jackson sued the "likely distributor" of the Blitz container that harmed him, Wal-Mart.  According to Jackson's operative complaint, Wal-Mart, the country's largest seller of plastic gas containers, "sold more than 40 million Blitz gas containers without flame arrestors between 2002 and 2013."

According to Jackson, his father purchased the subject Blitz gas container at a Wal-Mart Supercenter in Falcon, Colorado sometime between 2007 and 2013, while he was living in Calhan, Colorado.  Calhan, a small rural town with less than one thousand residents, was 20 to 30 miles from the Wal-Mart Super Center.  That meant Wal-Mart was "the only store within 40 miles of Jackson's father's home where Blitz gas containers were sold."  While living in Calhan, Jackson's father not only "regularly traveled to Falcon to shop at Wal-Mart," but in fact "bought everything from Wal-Mart."  After his father passed away, Jackson inherited the

3

gas container, which he alleges has markings or numbers on it that can identify Wal-Mart as the likely distributor.

Jackson sued Wal-Mart in federal court, invoking diversity jurisdiction. He asserted four claims under Alabama state law: (1) breach of the implied warranty of merchantability; (2) negligence; (3) wantonness; and (4) a violation of the AEMLD.

Wal-Mart moved to dismiss Jackson's complaint on two grounds. First, Wal-Mart argued Alabama Code §§ 6-5-501 and 6-5-521 shield it from liability for Jackson's claims. Second, Wal-Mart said Jackson's complaint did not meet federal pleading standards.

The district court granted Wal-Mart's motion to dismiss, ruling Jackson had not pled a plausible claim against Wal-Mart. The court reasoned Jackson had not pled enough facts to show his deceased father purchased the Blitz container at Wal-Mart. The court did not address Wal-Mart's immunity arguments.

This appeal followed.

## II.

We review de novo dismissals for failure to state a claim. Godelia v. Doe 1, 881 F.3d 1309, 1316 (11th Cir. 2018). In so doing, we need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," but they "may provide the framework of the complaint."

4

Ashcroft v. Iqbal, 556 U.S. 662, 678–79, 129 S. Ct. 1937, 1949–50 (2009).

However, we must assume the truth of well-pleaded factual allegations, construe

them in the light most favorable to the plaintiff, and only then analyze whether

they plausibly support an entitlement to relief.  Id. at 679, 129 S. Ct. at 1950;

Lanfear v. Home Depot, Inc., 679 F.3d 1267, 1271 n.4 (11th Cir. 2012).

"A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  Id. at 678, 129 S. Ct. at 1949.  This standard "is not akin to a

probability requirement," but it demands "more than a sheer possibility that a

defendant has acted unlawfully."  Id. (quotation marks omitted).  And it demands

more than facts "merely consistent with a defendant's liability."  Id. (quotation

marks omitted).  "Determining whether a complaint states a plausible claim for

relief [is] . . . a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense."  Id. at 679, 129 S. Ct. at 1950.

**III.**

As below, the main dispute on appeal is whether Jackson pled enough facts

to plausibly show his father purchased the container from Wal-Mart.  Like the

district court and the parties, we agree this question is central, because Wal-Mart

can be liable only if it sold the Blitz container to Jackson's father.  See Sheffield v.

5

Owens-Corning Fiberglass Corp., 595 So. 2d 443, 450 (Ala. 1992); Atkins v. Am.

Motors Corp., 335 So. 2d 134, 141 (Ala. 1976).

However, we come to a different conclusion than did the district court.

Accepted as true, Jackson's complaint alleges enough facts for us to conclude his

father bought the gas container at Wal-Mart.  The allegations relating to the

purchase of the gas container are not, as Wal-Mart argues on appeal, "formulaic

recitation[s] of the causation element of a product liability claim."  Jackson did not

just allege his father bought the gas container at Wal-Mart, but provided additional

"factual content" supporting his belief that his father bought it there.  Iqbal, 556

U.S. at 678, 129 S. Ct. at 1949.  His father lived in Calhan, Colorado, a small rural

town, between 2007 and 2013, before he passed away.  In that time period, Wal-

Mart sold tens of millions of Blitz gas containers, which were not equipped with

flame protectors.  While Jackson's father lived in Calhan, he shopped exclusively

at Wal-Mart.  And the Wal-Mart where he shopped not only sold Blitz gas

containers, but it was "the only store within 40 miles of [his] home where Blitz

containers were sold."  Taken as true and construed in the light most favorable to

Jackson, the complaint plausibly alleges Jackson's father bought the container

from Wal-Mart.

In reaching the opposite conclusion, the district court took Iqbal a step too

far.  While properly noting it would assume the truth of Jackson's factual

allegations, the district court used most of its opinion to explain why those factual allegations need not be accepted as true. For example, the district court rejected Jackson's allegation that his father bought everything at Wal-Mart while living in Colorado because "[the] complaint fail[ed] to provide any factual allegations directly supporting [this] assumption[]," like "the existence of any other individual with first-hand knowledge of purchases during the relevant time period." But Iqbal does not require a plaintiff to produce evidence supporting a complaint's factual allegations before we assume their truth. To the contrary, Iqbal tells us we must assume the truth of all well-pleaded allegations except legal conclusions, regardless of whether evidence may ultimately support them. See id. ("First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). The facts Jackson pled are not "mere conclusory statements" reciting the elements of a cause of action, but rather well-pleaded factual allegations we must assume true at this stage. Id.

Ultimately, Jackson may not be able to prove his father purchased the gas container from Wal-Mart. However, that is not the proper inquiry at this stage. Now it is only relevant whether Jackson's complaint plausibly supports the inference he did. Id. at 679, 129 S. Ct. at 1950. We hold it does.

7

**IV.**

Wal-Mart says we should nevertheless affirm the district court's dismissal because Alabama Code §§ 6-5-501 and 6-5-521 bar Jackson's claims, even though the district court did not pass on those arguments.  Of course, we have the discretion to affirm "on any ground supported by the record, regardless of whether the District Court relied on it."  Mink v. Smith & Nephew, Inc., 860 F.3d 1319, 1324 (11th Cir. 2017).  But, here, we think it best to allow the district court to consider these arguments in the first instance.  Cf. Schumann v. Collier Anesthesia, P.A., 803 F.3d 1199, 1203, 1213 (11th Cir. 2015) (remanding to allow the district court to apply a newly-adopted legal rule in the first instance); Danley v. Allen, 480 F.3d 1090, 1092 (11th Cir. 2007) (per curiam) ("While this Court certainly could review the record and applicable case law and render a reasoned decision on the qualified immunity issue, this is the responsibility of the district court in the first instance."); Nyland v. Moore, 216 F.3d 1264, 1266 (11th Cir. 2000) (per curiam) (observing, in the 28 U.S.C. § 2254 context, that "[i]f there is an issue that the district court did not decide in the first instance, it is not properly before this Court and we remand for the district court's consideration").

8

**V.**

For these reasons, we **REVERSE** the district court's dismissal of Jackson's claims under Rule 12(b)(6), and we **REMAND** for proceedings consistent with this opinion.